**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Velma A. Green,<br><br>                  *Debtor*. | Case No. 24-11420-pmm<br>Chapter 13 |

## Exhibit A

**Fill in this information to identify the case:**

Debtor 1: VELMA A GREEN

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern    District of Pennsylvania
                                                                    (State)

Case Number 24-11420

---

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. §§ 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1: Identify the Claim

**1. Who is the current creditor?**

ONEMAIN FINANCIAL GROUP, LLC
Name of the current creditor (the person or entity to be paid for this claim)

AS SERVICER FOR OneMain Financial Term Funding I

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

OneMain
PO Box 3251
Evansville, IN 47731-3251
Contact Telephone number: 800-266-9800
Contact e-mail: CBP@OneMainFinancial.com

Where should payments to the creditor be sent? (if different)

OneMain
PO Box 3251
Evansville, IN 47731-3251
Contact Telephone number: 800-266-9800
Contact e-mail: CBP@OneMainFinancial.com

Uniform claim identifier for electronic payments in Chapter 13 (if you use one):
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

[X] No
[ ] Yes. Claim number on court claims registry (if known) _____
         Filed on _____
                  MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No
[ ] Yes. Who made the earlier filing? _____

---

Official Form 410

UNCPK1 (03-27-22) Proof of Claim                                                        Page 1 of 3

Case 24-11420-mmh    Doc 19-1    Filed 06/14/24    Enter 06/14/24 10:34:10    Page 2 of 5
Case 24-11420-mmh    Claim 15-1    Filed 11/15/24    Desc Main Document    Page 2 of 3
Exhibit A    Page 3 of 14

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>6216</u> |
|---|---|
| 7. How much is the claim? | $ <u>20461.03</u>. Does this amount include interest or other charges?<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>Money Loaned</u> |
| 9. Is all or part of the claim secured? | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br><br>**Nature of Property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.<br>☒ Motor Vehicle<br>☐ Other. Describe <u>2009 CHEVY TRAVERSE</u><br><br>**Basis for perfection:** <u>see attached</u><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of Property:** $ <u>10100.00</u><br>**Amount of the claim that is secured:** $ <u>10100.00</u><br>**Amount of the claim that is unsecured:** $ <u>10361.03</u> (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ <u>3419.92</u><br>**Annual Interest Rate** (when case was filed) <u>25.28</u> %<br>☒ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____ |
| 11. Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |

Official Form 410

UNCPK2  (03-27-22) Proof of Claim

Page 2 of 3

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example in some categories, the law limits the amount entitled to priority. | [X] No<br><br>[ ] Yes. Check one:<br><br>[ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>[ ] Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>[ ] Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>[ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>[ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>[ ] Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | **Amount entitled to priority**<br><br>$ _____<br><br><br>$ _____<br><br><br><br>$ _____<br><br><br>$ _____<br><br>$ _____<br><br>$ _____ |
|---|---|---|

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| Part 3: | Sign Below |
|---|---|

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | Check the appropriate box:<br><br>[X] I am the creditor.<br><br>[ ] I am the creditor's attorney or authorized agent.<br><br>[ ] I am the trustee, or debtor, or their authorized agent. Bankruptcy Rule 3004.<br><br>[ ] I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date <u>06/14/2024</u><br>                            MM / DD / YYYY<br><br><u>/s/MADISON X. BECK</u><br>Signature<br><br>**Print the name of the person who is completing and signing this claim:**<br><br>Name     <u>MADISON X. BECK</u><br><br>Title      <u>Bankruptcy Specialist</u><br><br>Company <u>OneMain Financial</u><br>           Identify the corporate servicer as the company if the authorized agent is a servicer.<br><br>Address  <u>PO Box 3251</u><br>          <u>Evansville, IN 47731-3251</u><br><br>Contact phone <u>800-266-9800</u>    Email <u>cbp@onemainfinancial.com</u> |
|---|---|

Official Form 410

UNCPK3 (03-27-22) Proof of Claim

Case 24-11420-pmm    Doc 15-1    Filed 16/15/24    Entered 11/15/24 21:34:19    Page 4 of 5
Case 24-11420-pmm    Claim 15-1    Filed 11/15/24    Desc Main Document    Page 4 of 5
Exhibit A    Page 5 of 14

**SECURED Proof of Claim Attachment - Itemized Statement of the Interest, Fees, Expenses or Charges**

The following is an itemization of Interest, Fees, Expenses or Charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

Name of Debtor:  VELMA GREEN  
Case Number:  2411420  
Last four digits of any number use to identify the debtor's: 6216

**Part 1: Statement of Principal and Interest Due as of the Petition Date**

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due  $ 18,256.00

2. Interest due

| | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | | |
|---|---|---|---|---|---|---|
| Interest Accrued | | | | $ - | | |
| Earned Unpaid Interest | 25.28% | 5/25/2022 | 4/29/2024 | $ 1,996.61 | | |
| | | Total interest due as of petition date | | $ 1,996.61 | Copy total here | $ 1,996.61 |

3. Total principal and interest due  $ 20,252.61

**Part 2: Statement of Prepetition Fees, Expenses, and Charges**

Itemize the fees, expenses, and charges incurred in connection with the claim as of the petition date (included in the Amount of Claim listed on Item 1 on the Proof of Claim form).

| Description | Dates incurred | | | Amount | |
|---|---|---|---|---|---|
| Late Charges | 11/3/2023 | to | 4/29/2024 | $ 158.42 | |
| Non-Sufficient funds (NSF) fees | 5/25/2022 | to | 4/29/2024 | $ 50.00 | |
| Attorney's fees | | to | | $ - | |
| Judgment fees | | to | | $ - | |
| Filing fees and court costs | | to | | $ - | |
| Advertisement costs | 11/3/2023 | to | 4/29/2024 | $ - | |
| Sheriff/auctioneer fees | 11/3/2023 | to | 4/29/2024 | $ - | |
| Title costs | 11/3/2023 | to | 4/29/2024 | $ - | |
| Recording fees, Recovery/Reconvey Fees | 11/3/2023 | to | 4/29/2024 | $ - | |
| Appraisal/broker's price opinion fees | 11/3/2023 | to | 4/29/2024 | $ - | |
| * Insurance advances | 5/25/2022 | to | 4/29/2024 | $ 530.49 | * |
| * Other. Specify: Forbearance Interest | 5/25/2022 | to | 4/29/2024 | $ - | * |
| * Other. Specify: Creditor Placed Insurance | 5/25/2022 | to | 4/29/2024 | $ - | * |
| Other | 5/25/2022 | to | 4/29/2024 | $ - | |
| Other | 5/25/2022 | to | 4/29/2024 | $ - | |
| Other | 5/25/2022 | to | 4/29/2024 | $ - | |
| Total Prepetition fees, expenses, and charges. Add all of the amounts listed above. | | | | $ 738.91 | |

*NOTE: Not all amounts listed in Total from Part 2 are considered past due, and Total copied into Part 3 has been adjusted to only include the amounts allowable for arrearage(s) as of the Petittion Date*

[OneMain Confidential]

Case 24-11202-pmm    Doc 19-1    Filed 06/14/24    Entered 06/14/24 20:34:19    Page 5 of 5
Case 24-11202-pmm    Doc 19-1    Filed 11/15/24    Entered 11/15/24 21:34:19    Page 5 of 5
Exhibit A    Page 6 of 14

Page 2

**Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date**

| | | | | |
|---|---|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | 11/17/2023 | | |
| | Number of installment payments due | 6 | | |
| | Current Monthly Payment | $ 535.25 | | |
| | | | From Date mm/dd/yyyy | To Date mm/dd/yyyy |
| 2. Amount of installment payments due | Amount for First Payment Default _____ installment(s) @ _____ | | | |
| | Amount for Partial Regular Monthly Installment _____ installment(s) @ _____ | | | |
| | Amount for Ongoing Regular Monthly Installment(s) Due  6  installment(s) @ $ 535.25 | $ 3,211.50 | 11/4/2023 | to  4/29/2024 |
| | Amount for After Maturity Payoff Balance _____ installment(s) @ _____ | | | |
| | Amount of Increase Due to Creditor Placed Insurance _____ installment(s) @ _____ | | | |
| | Amount of Increase Due to Creditor Placed Insurance _____ installment(s) @ _____ | | | |

*\*\*Effective  4/29/2024   the ongoing monthly payment is:     $535.25*

| | | | |
|---|---|---|---|
| | Total installment payments due as of the petition date | $ 3,211.50 | Copy total here  $ 3,211.50 |
| | Add total prepetition fees, expenses, and charges | | \*\*Copy total from Part 2 here  $ 208.42 |

**\*\*NOTE: Not all amounts listed in Total from Part 2 are considered past due, and Total copied into Part 3 has been adjusted to only include the amounts allowable for arrearage(s) as of the Petitition Date**

| | | |
|---|---|---|
| Subtract total of unapplied funds (funds received but not credited to account) | | $ - |
| Subtract amounts for which debtor is entitled to a refund | | $ - |
| Total amount necessary to cure default as of the petition date | | **$ 3,419.92** |

Case 24-11202-pmm    Doc 19-1    Filed 06/14/24    Entered 06/14/24 20:34:19    Page 5 of 5
Case 24-11202-pmm    Doc 19-1    Filed 11/15/24    Entered 11/15/24 21:34:19    Page 5 of 5
Exhibit A    Page 6 of 14

[OneMain Confidential]

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**      **OneMain** Financial.

| DATE 05/25/22 | ACCOUNT NUMBER ████6216 | TYPE OF LOAN (Alpha) H00 | DATE FINANCE CHARGE BEGINS TO ACCRUE 05/25/22 |
|---|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | BORROWER(S) NAME AND ADDRESS ("I","We") |
|---|---|
| ONEMAIN FINANCIAL GROUP, LLC<br>1 INTERNATIONAL PLZ STE 145<br>PHILADELPHIA, PA 19113-1529     610-461-0815 | VELMA A GREEN<br>1315 PARKER ST<br>CHESTER, PA 19013 |

I have carefully read this entire Loan Agreement And Disclosure Statement and all related documents which include the Optional Products Disclosure Summary, Truth In Lending Insurance Disclosure and, if applicable, Personal Property Appraisal Form and GAP Waiver Addendum, all of which collectively constitute the "Agreement." This Loan Agreement and Disclosure Statement is divided into four sections: **A. Truth In Lending Disclosures; B. Loan Terms And Conditions; C. Arbitration Agreement And Waiver Of Jury Trial and D. Entire Agreement/Notices/Signature.** If I had any questions, I asked them before I signed these documents. By signing, I indicate my agreement to the statements, promises, terms, and conditions contained in the Agreement.

### A. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 25.69 % | $ 14244.20 | $ 17983.83 | $ 32228.03 |

| My Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| | 1 | $ 648.28 | 07/03/22 |
| | 59 | $ 535.25 | monthly beginning 08/03/22 |

**LATE CHARGE:** [X] If any payment is not paid in full within __10__ days after its due date, I will be charged __1.50__ % of the unpaid amount of the payment, but not more than $__N/A__ or less than $__1.00__.

[ ] If any payment is not paid in full within ____ days after its due date, I will be charged $_____ if the entire scheduled payment exceeds $_____ or $_____ if the entire scheduled payment is $_____ or less.

**PREPAYMENT:** If I pay off early:
- [ ] I may [X] I will not have to pay a penalty for prepaying all or part of a loan's principal balance.
- [X] I may [ ] I will not get a refund or credit of part of the finance charge for a prepayment in full. I will not receive a refund or credit for a partial prepayment.

**SECURITY:** I am giving Lender a security interest in: [ ] Unsecured [X] Motor Vehicles [ ] Other Collateral

| Year | Make | Model | VIN/Serial No. |
|---|---|---|---|
| 2009 | CHEVROLET | TRAVERSE | 1GNEV23D49S109541 |

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf
1. $ 1380.94    Single Disability Premium    Paid To DISABILITY INSURANCE COMPANY *
2. $NONE    Paid To
3. $NONE    Paid To
4. $NONE    Paid To
5. $NONE    Paid To
6. $NONE    Paid To
7. $NONE    Paid To
8. $NONE    Paid To
9. $NONE    Paid To
10. $NONE    Paid To
11. $    Paid To
12. $    Paid To      * Lender may retain a portion of these amounts.
13. $    Paid To
14. $    Paid To
15. $    Paid To
16. $    Paid To
17. $    Paid To
18. $    Paid To
19. $    Paid To
20. $    Paid To
21. $ 15102.89    Paid To Amt Paid on Prior Account with Lender 6216
22. $    Paid To
23. $    Paid To
24. $    Paid To
25. $ 15102.89    Total Paid on Prior Account(s) with Lender

Amounts Paid to me
26. $ 1500.00    Paid To VELMA GREEN
27. $    Paid To
28. $    Paid To
29. $    Paid To
30. $    Paid To
31. $    Paid To

$ 17983.83    Amount Financed (Sum of lines 1 - 24, 26 - 31)
$ 150.00    Prepaid Finance Charges (itemized below)

### PREPAID FINANCE CHARGES

1. $ 150.00 Service Charge    Paid To LENDER
2. $NONE    Paid To
3. $NONE    Paid To
4. $NONE    Paid To
5. $NONE    Paid To
6. $NONE    Paid To
7. $NONE    Paid To
8. $NONE    Paid To

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

E-SIGNED by VELMA GREEN
on 2022-05-25 17:17:35 GMT

Borrower                    Co-Borrower

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

PAAAK1 (12-05-21) C.E. Agreement      Page 1

*COPY* (watermark)

## B. LOAN TERMS AND CONDITIONS

**DATE OF LOAN.** 05/25/22 (the date the Finance Charge is scheduled to begin to accrue).

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the TRUTH IN LENDING DISCLOSURES, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

**SECURITY INTEREST.** To secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I hereby grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the TRUTH IN LENDING DISCLOSURES, including a purchase money security interest if property is being purchased with the proceeds hereof; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property ((a), (b), and (c) collectively referred to as the "Collateral"). I also hereby grant Lender a security interest in any unearned premiums from any credit insurance I have elected and purchased through Lender in connection with this transaction and any Required Insurance which protects the Collateral. Lender's security interest shall remain in effect, and subject to any modifications, renewals, extensions, and future advances thereof, until I have paid in full all amounts due under this Agreement. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. Unless prohibited by law I agree to pay the recording costs of your filing a financing statement, continuation statement and for releasing the security interest upon my payment in full.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

Each of us under this Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Collateral securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Except as otherwise required by law, Lender does not have to notify Borrower before instituting suit against another Borrower if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Co-Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Co-Maker(s).

**AUTHORIZATION TO USE CREDIT REPORT.** By signing this Agreement, I authorize Lender to obtain, review and use information contained in my credit report in order to determine whether I may qualify for other products and services marketed by Lender. This authorization terminates when my outstanding balance due under this Agreement is paid in full. I may cancel such authorization at any time by writing the following: OneMain, P.O. Box 70911, Charlotte, NC 28272-0911. In order to process my request, Lender must be provided my full name, address, and account number.

**VOLUNTARY CREDIT INSURANCE.** As used in this Agreement, the term "credit insurance" includes credit life insurance, credit disability insurance, credit involuntary unemployment insurance, and credit property insurance. An affiliate of the Lender may provide the credit insurance that I voluntarily select. I acknowledge that Lender and/or its affiliates may profit from my purchase of voluntary credit insurance.

**REQUIRED INSURANCE.** I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance"). The Required Insurance must keep the Collateral insured against hazards for which Lender requires insurance. Such coverage includes, but is not limited to, loss by theft, vandalism, collision, fire, and any other risks of loss that would either impair Lender's interest in the Collateral or adversely affect the value of the Collateral. I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may not decline to accept any insurance provided by me unless it is for reasonable cause. Examples of reasonable cause include, but are not limited to, the financial condition of the insurer and the amount or type of coverage chosen. My choice of insurer will not otherwise affect Lender's credit decision or my credit terms. The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement. Required Insurance must: (a) include a lender's loss payable provision; (b) name Lender, its successors and/or assigns, as loss payee; (c) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee; and (d) not include any disclaimer of the insurer's liability for failure to give such notice. I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the security instrument are paid in full, my account is terminated, and Lender releases or discharges its security interest. In case of damage to or loss of the Collateral, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If I do not keep Required Insurance under this Agreement in force at all times Lender may, but is not required to, in Lender's sole discretion, and at my expense, obtain insurance coverage to protect Lender's interest in the Collateral. I understand and agree that:

A. Lender is under no obligation to obtain any particular type or amount of coverage.
B. Lender-obtained insurance may, but need not, protect my interests.
C. Lender-obtained insurance may, but need not, pay any claim I make.
D. the cost of Lender-obtained insurance may be much more than the cost of insurance I could have obtained on my own.
E. any amounts disbursed by Lender under this Section to obtain insurance shall become additional debt of mine under this Agreement, secured by this Agreement or the Security Instrument. This additional debt will be payable upon notice from Lender to me requesting payment.
F. I am hereby authorizing Lender to release to, or obtain from, third parties any information necessary to monitor the status of Required Insurance.
G. Lender-obtained insurance may be purchased from an affiliate of Lender.
H. Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.
I. Lender may, at any time and at its sole option, cancel Lender-obtained insurance.
J. Lender has a security interest in any unearned premiums from such insurance;
   1. I am hereby absolutely assigning to Lender any rights I may have to unearned Lender-obtained insurance premiums; and
   2. I am hereby authorizing and appointing Lender to be my attorney-in-fact for the purpose of cancelling the Lender-obtained insurance and applying the unearned premiums to reduce the account balance upon cancellation of said insurance.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** Where allowed by law, I hereby absolutely assign to Lender my rights to any Required Insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, and any other rights under policies covering the Collateral up to, but not in excess of the Total Balance due under this Agreement or security instrument. I agree that Lender may use any insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, to reduce the amounts that I owe under this Agreement or the security instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds or unearned premium refunds paid to Lender do not satisfy all amounts that I owe under this Agreement or the security instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the security instrument.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release, or cause to be released, all liens upon payment in full.

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION



UXBB81 (04-10-22) C.E. Agreement - without Contract Rate        Page 2

Initials  N/A    N/A
(Initials required for physical form)

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** Other than the class action waiver described in subsection G of section C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL, the fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any third party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, Lender may consider you to be in default of this Agreement if any one or more of the following occurs:

A. I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement within 30 days of the payment due date.
B. I fail to do anything else I have agreed to do in this Agreement.
C. Any statement or representation I made in my credit application is untrue or incorrect.
D. I fail to provide Lender with proof of residence or Required Insurance within ten (10) business days after Lender's written request for this information.
E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
G. Any police or governmental agency seizes or impounds the Collateral or starts forfeiture proceedings against the Collateral.
H. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

**(For Kansas residents only:)** Lender believes the foregoing events B. through J. would significantly impair the prospect of payment, performance, or realization of collateral. The burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue interest from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges at the Contract Rate from the date paid until repaid in full to Lender.
C. Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
D. Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses before all other amounts due hereunder.
E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
F. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
G. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights hereunder are cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral taken into possession as provided above.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement which, if mailed, shall be sent to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the remaining unpaid balance that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods or services from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement: **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

UXAC81 (12-08-19) C.E. Agreement　　Page 3

Initials　N/A　　N/A
(Initials required for physical form)
Account Number　████6216

☐ **INTEREST BEARING LOAN.** If checked, I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the Payment amounts shown in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest accrued to the date the payment is received and applied by Lender; and (c) if there is any remainder of the payment, the unpaid Principal balance. Interest on my loan accrues daily on the unpaid Principal balance. If I pay early, more of my payment will be applied to the unpaid Principal balance. If I pay late or miss payments, more of my payment will be applied to interest. This will delay my Principal reduction and cost me more in interest. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by the Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full, to the extent permitted by applicable law. Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☒ **PRECOMPUTED LOAN.** I agree to pay the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus any other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. I agree to pay interest on any late charges and any amounts advanced by Lender to purchase Required Insurance that remain unpaid after my final scheduled payment due date, computed at the Contract Rate, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; and (b) the Total of Payments amount. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the rate of 1.5% per month, until paid in full.

**EXTENDED FIRST PAYMENT DUE DATE CHARGE.** $  113.03 . If an amount is disclosed, I have requested an extended first payment due date and agree to pay the disclosed charge.

**PREPAYMENT.** I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

If my loan is a precomputed loan, and I prepay this loan in full, the amount I owe will be reduced by any unearned finance charges, computed by (a) if the term of this Agreement is sixty-one (61) months or less, the Rule of 78s method, as provided by the Pennsylvania Consumer Discount Company Act, or (b) if the term of this Agreement is more than sixty-one (61) months, the actuarial method. No refund of less than $1.00 will be made.

**LATE CHARGE.** I agree to pay any late charge described in the TRUTH IN LENDING DISCLOSURES herein.

**DEFERMENT CHARGE.** If my loan is a precomputed loan and I fail to make a payment with 10 days of its due date and I request a deferment of one or more payments, Lender may at its sole option defer the due dates of all remaining scheduled payments, and I agree to pay a deferment charge of the greater of $1.00 or 1.5% per month of the amount deferred for the period of deferment. No default charge on the deferred payment may be collected in addition to the deferment fee unless a subsequent delinquency occurs in the payment deferred.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $50.00.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and Federal law.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

PAAD81 (11-07-21) C.E. Agreement (Consumer Discount)        Page 4         Initials  N/A    N/A
                                                                           (Initials required for physical form)

## C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties that is more informal than a lawsuit in court. In arbitration, both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury. Arbitration allows for more limited discovery than in court, and an arbitrator's rulings are subject to limited review by courts. Arbitration takes place on an individual basis; class proceedings are not permitted. **UNDER THIS ARBITRATION AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION TO THE FULLEST EXTENT PERMITTED BY LAW.**

**1. CLAIMS AND DISPUTES COVERED.** Except as specified in this Arbitration Agreement, Lender and I agree that either party may elect arbitration of any Covered Claim. The term "Covered Claim" is intended to be broadly interpreted and includes the following claims or disputes, whether based in contract, tort, statute, equity, or any other legal theory:

- claims arising out of or relating to **any aspect of the relationship** between Lender and me, including, but not limited to, this Agreement or loan; any previous retail credit agreement ("Retail Contract") assigned to Lender; or any previous loan from or assigned to Lender;
- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan or Retail Contract made by or assigned to Lender or to any other of Lender's products or services;
- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan or Retail Contract made by or assigned to Lender;
- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me;
- claims arising out of or relating to any insurance product, service contract, membership plan, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender;
- claims arising out of or relating to communications by or on behalf of Lender, including claims under the Telephone Consumer Protection Act, do-not-call regulations, or similar laws or any other claim involving emails, faxes, text messages, or calls placed using automated technology or an artificial or prerecorded voice, including communications relating to offers of unrelated products or services; and
- claims arising out of or relating to the collection, retention, protection, use, disclosure, or transfer of any information about me or my accounts for any of Lender's products or services.

A Covered Claim is subject to arbitration regardless of when it arose, whether it is before the date of this or any prior Agreement between Lender and me (such as claims relating to advertising or disclosures or claims involving predecessors), or whether the claim arises after the termination of this Agreement. This Arbitration Agreement shall survive the termination of any loan or Retail Contract between Lender and me. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

**2. COVERED CLAIMS BY OR AGAINST THIRD PARTIES.** This Arbitration Agreement also covers claims brought by or against my and Lender's Third Parties. My Third Parties consist of any co-owners of my account, any authorized or unauthorized users or beneficiaries of my account or the loan, and each of those person's assignees, heirs, trustees, agents, or other representatives. The Lender's Third Parties consist of Lender's employees, officers, agents, or directors; Lender's affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; any third party that provides me any product or service which I purchased with the assistance or involvement of Lender; any third party that participates in efforts to collect a debt owed under or to repossess collateral pursuant to this or any other Agreement or loan issued by or assigned to Lender; any other third party providing services to or contracting with Lender or any of Lender's Third Parties; and any of the employees, officers, agents, directors, affiliates, predecessors, successors, or assigns of such third parties. Affiliate corporations are Lender's past, present, and future parent corporations, subsidiary corporations, and sister corporations, including each of those corporation's predecessors, successors, and assigns. Lender's affiliates include but are not limited to OneMain Consumer Loan, Inc., iLoan, OneMain Home Equity, Inc., OneMain Financial Services, Inc., and Yosemite Insurance Company.

**3. MATTERS NOT COVERED BY ARBITRATION.** All claims for damages must be arbitrated, but I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. In addition, instead of pursuing arbitration, either Lender or I also have the option to bring an individual lawsuit in small claims or equivalent court, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction. If these limitations on removal or appeal of small claims court actions are unenforceable, the dispute instead shall be arbitrated. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or previously filing different claims in small claims court. In addition, disputes over a claim or whether a dispute can or must be arbitrated, including disputes over the validity and enforceability of this Arbitration Agreement or whether sections 5, 10, or 12 of this Arbitration Agreement have been violated, are for a court to decide. Nothing in this Arbitration Agreement precludes me from bringing issues to the attention of federal, state, or local agencies or law enforcement. Such agencies can, if the law allows, seek relief against Lender on my behalf.

**4. PRE-ARBITRATION NOTICE OF DISPUTE AND INFORMAL RESOLUTION.** A party who intends to seek arbitration must first send to the other party a written Notice of Dispute ("Notice"). The Notice to Lender may be sent by U.S. mail or professional courier service addressed to OneMain Financial, Legal Department, 100 International Drive, 16th Floor Baltimore, MD 21202 ("Notice Address"). The Notice to me may be sent to the address on file with my account. The Notice must include all of the following information: (a) my name; (b) my account number; (c) a description of the nature and basis of the claim or dispute; (d) an explanation of the specific relief sought and the basis for the calculations; (e) the signature of the party sending the Notice; and (f) if I am sending the Notice and have retained an attorney, my signed statement authorizing Lender to disclose my confidential account records to my attorney if necessary in resolving my claim.

After the Notice containing all of the information required above is received, within 60 days either party may request a conference to discuss informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the Informal Settlement Conference will take place at a mutually agreeable time by telephone or videoconference. I and a Lender representative must both personally participate in a good-faith effort to resolve the dispute informally without the need to proceed with arbitration. Any counsel representing Lender or me also may participate. The requirement of personal participation in an Informal Settlement Conference may be waived only if both Lender and I agree in writing.

Any applicable statute of limitations will be tolled during the period between the date that either Lender or I send the other a fully complete Notice, until the later of (i) 60 days after receipt of the Notice; or (ii) if an Informal Settlement Conference is timely requested, 30 days after completion of the Informal Settlement Conference (the "Informal Resolution Period").

**5. COMMENCING ARBITRATION.** An arbitration proceeding may be commenced by filing a demand for arbitration with the American Arbitration Association ("AAA") only if Lender and I do not reach an agreement to resolve the claim during the Informal Resolution Period. A court will have authority to enforce this section 5, including the power to enjoin the filing or prosecution of arbitrations without first providing a fully complete Notice and participating in a timely requested Informal Settlement Conference. Unless prohibited by applicable law, the arbitration provider shall not accept or administer any arbitration unless the claimant has complied with the Notice and Informal Settlement Conference requirements of Section 4.

**6. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the Consumer Arbitration Rules ("AAA Rules") of the AAA in effect at the time arbitration is started, as modified by this arbitration provision, and will be administered by the AAA. (If the AAA is not available or unwilling to administer arbitrations consistent with this Arbitration Agreement or you object to the AAA for good cause, another arbitration provider shall be selected by the parties or, if the parties cannot agree on a provider, by the court.) The AAA Rules are available online at https://www.adr.org/consumer or by writing to the Notice Address.

**7. SELECTION OF ARBITRATOR.** The AAA maintains lists of approved arbitrators. The AAA will provide Lender and me each a list of seven possible arbitrators. Lender and I will each have an opportunity to strike three persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator. The arbitrator must be a lawyer with at least 10 years of experience or a retired judge.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

UXAE61 (04-10-22) C.E. Agreement    Page 5

Initials  N/A   N/A
(Initials required for physical form)

Account Number  6216

**8. COSTS OF ARBITRATION.** The AAA charges certain fees in connection with arbitration proceedings. I may have to bear some of these fees; however, if I am not able to pay my share of those fees or think they are too high, Lender will consider any reasonable request to bear those fees, so long as I have fully complied with the requirements of sections 4, 5, and 10 for any arbitration I initiate. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me.

**9. CONDUCT OF PROCEEDINGS.** All issues are for the arbitrator to decide, except as specified in this Arbitration Agreement. In resolving the parties' claims, the arbitrator shall apply all applicable substantive law and honor all privileges (such as the attorney-client privilege and attorney work product doctrine) recognized in law. The arbitrator may consider rulings in other arbitrations involving other claimants, but an arbitrator's ruling will not be binding in proceedings involving different claims. Except as specified in section 12 below, the arbitrator can award the same damages and relief that a court can award under applicable law.

**10. MASS FILINGS.** If 25 or more claimants submit Notices or file arbitrations raising similar claims and are represented by the same or coordinated counsel, all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved prior to arbitration as set forth in section 4. The parties agree that the individual resolution of claims in arbitration might be delayed if the claims are pursued in connection with 25 or more similar claims. In the first stage, the parties shall each select up to 10 cases per side (20 cases total) to be filed in arbitration and resolved individually in accordance with this arbitration agreement, with each case assigned to a separate arbitrator. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, administer, nor demand payment for AAA fees for arbitrations commenced in violation of this section 10. If the parties are unable to resolve the remaining cases after the conclusion of the first stage of bellwether proceedings, each side may select up to another 10 cases per side (20 cases total) to be filed in arbitration and resolved individually in accordance with this arbitration provision in the same manner. This process of staged bellwether proceedings shall continue until the parties are able to resolve all of the claims, either through settlement or arbitration. If these mass filing procedures apply to a claimant's Notice of Dispute, any statute of limitations applicable to the claims set forth in that Notice will be tolled from the time the first cases are selected for bellwether proceedings until the claimant's Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have the authority to enforce this section 10 and, if necessary, to enjoin the filing or prosecution of arbitrations or the assessment or collection of AAA fees.

**11. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims seeking or resulting in an award of $100,000 or more (including costs and attorneys' fees), any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the AAA. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision and award shall be subject to judicial review on the grounds set forth in the Federal Arbitration Act.

**12. REQUIREMENT OF INDIVIDUAL ARBITRATION.** The arbitration may award relief (including, but not limited to, damages, restitution, and declaratory and injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **Lender and I agree that each may bring claims against the other only in its or my individual capacity and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding.** Further, unless both Lender and I agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class, representative, or private attorney general proceeding. If, after exhaustion of all appeals, any of these prohibitions on non-individualized relief, class, representative, and private attorney general claims, and consolidation is found to be unenforceable as to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**13. FUTURE CHANGES TO ARBITRATION AGREEMENT.** Notwithstanding any provision in this Agreement to the contrary, Lender and I agree that if Lender makes any future change to this Arbitration Agreement (other than a change to the Notice Address), I may reject any such change by sending Lender written notice with 30 days of the change to the Notice Address. This is not a rejection of arbitration altogether. By rejecting any future change, I am agreeing that we will arbitrate any Covered Claim in accordance with this version of the Arbitration Agreement.

## D. ENTIRE AGREEMENT/NOTICES/SIGNATURE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

---

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UXARB2 (07-15-12)

---

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of all of the documents comprising this Agreement, and the Privacy Notice and agree to be bound thereby.

**Consent to be Contacted by Telephone.** I expressly consent and agree that Lender may contact me at any telephone number that I provide Lender now or in the future, including a number for a cellular phone or other wireless device and a number that I later convert to a cellular phone or other wireless device. I understand that this consent means that I agree to receive voice calls using automatic telephone dialing systems, prerecorded or artificial voice messages and text messages by or on behalf of Lender for transactional purposes, such as the collection and servicing of my loan account with Lender.

**NOTICE TO CONSUMER:** 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

---

x _N/A_____   x  _E-SIGNED by VELMA GREEN on 2022-05-25 17:17:43 GMT_____ L.S.
Witness                                        Borrower       VELMA A GREEN

x _N/A_____   x _____ L.S.
Witness                                        Co-Borrower

x _____ L.S.  x _____ L.S.
Co-Maker                                        Co-Maker

Print Name: _____     Print Name: _____

UXAF41 (04-10-22) C.E. Agreement                Page 6



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# OneMain

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | 6216 | **Financed Date** | 5/25/2022 |
| **Loan Number** | | **Perfected Date** | 2/22/2022 |
| **Branch** | 3265 | **Payoff Date** | |
| **Borrower 1** | GREEN, VELMA A | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | 1315 PARKER ST CHESTER, PA 19013 | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | 27431801002 |
| **Lienholder** | ONE MAIN FINANCIAL GROUP LLC |
| **Lienholder Address** | PO BOX 278 WILMINGTON, OH 45177 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1GNEV23D49S109541 | **Issuance Date** | 9/20/2021 |
| **Title Number** | 68073797 | **Received Date** | 9/20/2021 |
| **Title State** | PA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2009 | **Odometer Reading** | 97363 |
| **Make** | CHEV | **Branding** | |
| **Model** | TRV | | |
| **Owner 1** | GREEN,VELMA ALEASE | | |
| **Owner 2** | | | |
| **Owner Address** | 1315 PARKER ST CHESTER, PA 19013 | | |

**Printed:** Monday, June 3, 2024 11:09:19 AM PST

